# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS
# AT KANSAS CITY

| | |
|---|---|
| JOSHUA BRUNSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| UNIFIED GOVERNMENT OF | ) |
| WYANDOTTE COUNTY/KANSAS CITY, | ) |
| KANSAS, DANNY THORNTON, COLIN | ) |
| WARD, MICHAEL YORK, | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff Joshua Brunson ("Brunson"), for his Complaint against Defendants, Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government/KCK"), Danny Thornton ("Thornton"), Colin Ward ("Ward") and Michael York ("York"), states as follows:

### NATURE OF ACTION, JURISDICTION, AND VENUE

1. In the early morning of Memorial Day, May 25, 2020, in the parking lot of Terrace Pointe Apartments located at 617 S. 71st Terr., Kansas City, Kansas, Mr. Brunson was grievously injured when two Police Department officers – Defendants Thornton and Ward – tased Mr. Brunson twice and shot him with their firearms four times. Although Mr. Brunson was unarmed, committing no crime, and not a threat to anyone, Defendants Thornton and Ward stunned and then then fired their handguns over 20 times at Mr. Brunson, striking him in the left arm, abdomen, and twice in the back. The two bullets that punctured his back remain there, as Mr. Brunson's physicians do not want to remove them because of their proximity to his spinal cord. So, Mr.

Brunson continues to live with not only extreme pain and limitation, but also fear of paralysis or death.

2. This is a civil action for redress of Mr. Brunson's rights under the Fourth and Fourteenth Amendments of the United States Constitution and for negligence. He brings this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 ("Section 1983"), and various Kansas state statutes and common law. He seeks damages for the violation of his civil rights under the Fourth and Fourteenth Amendments, for Defendants' reckless, deliberate, and unlawful use of excessive force, failure to supervise and the deficient policies and training that caused the officers to create their own "jeopardy" and which led directly to the tasing and shooting of the unarmed Mr. Brunson.

3. This Court has personal jurisdiction over the parties because all the Defendants are residents of the State of Kansas and/or because all of events and acts alleged in this Complaint took place and were committed by the Defendants in the State of Kansas.

4. Jurisdiction is conferred by 28 U.S.C. § 1331 and 1343, which provide for original jurisdiction of this Court in suits based respectively on federal questions and authorized by 42 U.S.C. § 1983, to redress the deprivation under color of state law, statute, ordinance, regulation, custom or usage of any right, privilege, or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. This Court has supplemental jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Plaintiff's actions for damages are authorized by: (a) 42 U.S.C. § 1983, which provides for redress for the deprivation under color of any statute, ordinance, regulation, custom or usage of any state or territory of any rights, privileges or immunities secured to all the citizens

or persons within the jurisdiction of the United States; (b) the Fourth and Fourteenth Amendments of the United States Constitution; (c) 42 U.S.C. § 1988, which authorizes Plaintiff's application for attorneys' fees and provides that a court may award a reasonable attorneys' fee as part of costs in any action or proceeding to enforce a provision of 42 U.S.C. § 1983; and the common laws and statutes of the State of Kansas.

6. Venue is proper in the United States District Court for the District of Kansas under 28 U.S.C. § 1391(a)(2), as the events or omissions giving rise to Plaintiff's claims occurred in Kansas City, Wyandotte County, Kansas.

## THE PARTIES

7. Plaintiff, Mr. Brunson, is presently and was at all times relevant to this Complaint, a citizen of Kansas City, Wyandotte County, Kansas.

8. Defendant Unified Government/KCK/KCK is a body corporate organized under the laws of the State of Kansas and a consolidation of the governments of the City of Kansas City, Kansas and Wyandotte County, Kansas, which can sue and be sued in its corporate name. Defendant oversees and implements the policies, procedures, rules, regulations and guidelines of the Kansas City, Kansas Police Department ("Police Department").

9. Defendants Ward and Thornton, at the time of the events alleged in this Complaint, were duly sworn law enforcement officers for the Police Department and are being sued in both their individual capacity and official capacity.

10. Defendant York, at the time of the events alleged in this Complaint, was the Interim Chief of Police and final policymaker of the Kansas City, Kansas Police Department and had supervisory and training responsibilities for Defendants Ward and Thornton. He is being sued in

both his individual capacity and his official capacity and can be named as a defendant to represent the Police Department.

11. All of the Defendants, at all times material to this Complaint, acted under color of state law.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12. Mr. Brunson was born on November 11, 1988, and at the time of the incident, he was 32 years old.

13. Mr. Brunson has a history of mental illness, and he suffered with depression, anxiety disorder, schizophrenia, and bipolar disorder.

14. On Monday, May 25, 2020, Defendants Ward and Thornton were working an overtime second shift because of lack of staffing at the Police Department.

15. Separately, Defendants Thornton and Ward were in their respective squad cars patrolling the Terrace Point Apartments and observed a 2019 F-150 Ford Raptor truck in the parking lot during an area check.

16. Defendants Thornton and Ward had prior knowledge that the Raptor had been stolen from a Leavenworth Kansas automobile dealership.

17. Defendants Thornton and Ward drove into the parking lot, exited their vehicles, and spoke to an African American female carrying a child in the vicinity of the Raptor, which had been backed into the parking space and was facing away from the curb.

18. While speaking with the female party, Defendants Thornton and Ward noticed an African American male walking toward the parking lot.

19. The African American male entered the Raptor and left the driver's side door open.

4

20. Defendant Thornton ran to the open door on the driver's side to command the African American male not to move the truck.

21. To support Defendant Thornton, Defendant Ward ran to the driver's side next to the front wheel well.

22. At no point was either Defendant Thornton or Defendant Ward in the path of the Raptor.

23. Defendant Thornton then tased Mr. Brunson, causing Mr. Brunson to involuntarily move the truck forward.

24. Both Defendant Thornton and Defendant Ward left their positions at the driver's side and backed away to the north 20' to 30' from the Raptor while drawing their firearms and firing indiscriminately to the south at the incapacitated Mr. Brunson in the vehicle.

25. Defendant Ward emptied the clip of his firearm and reloaded.

26. Of the 20 shots fired by Defendants Ward and Thornton, several shots struck just the Raptor. Others flew over and through the Raptor nearly striking the woman with whom the officers had conversed and the toddler she was cradling. Four bullets struck Mr. Brunson.

27. Bleeding profusely from his gunshot wounds, Mr. Brunson climbed over the passenger seat, crawled out the passenger door to get away from the shooters, and stumbled into the nearest apartment building to find safety.

28 In pursuit, Defendant Ward and Defendant Thornton tackled Mr. Brunson inside the hallway of the apartment, rolled him onto his stomach and knelt on his back until the paramedics called by one of the residents arrived to provide medical assistance.

29. Defendants Ward and Thornton were not wearing their body cameras as required by Department policy, but one of security cameras outside the apartment fortunately captured the

shooting and mobile phone cameras operated by residents captured the events inside the apartment building.

30. Unbeknownst to Defendants Ward and Thornton, the African American male they shot was Mr. Brunson and Mr. Brunson had been hired to clean and detail the Raptor.

31. When questioned under oath during a pretrial hearing on the circumstances of the shooting, Defendants Thornton and Ward invoked their Fifth Amendment right against self-incrimination and refused to testify.

32. The Kansas Bureau of Investigation ("KBI") would later conclude that Defendants Thornton and Ward were never in any danger from Mr. Brunson or the Raptor he was operating in part because Mr. Brunson could not have operated the vehicle in the manner they described.

33. Not surprisingly, all charges Defendants subsequently leveled at Mr. Brunson, including one for illegally possessing a firearm which turned out to be a "tinting" gun for car windows and another for possession of a stolen vehicle, have been dismissed.

34. Mr. Brunson was rushed to Kansas University Medical Center, provided emergency medical care to treat the gunshot wounds and nearly died from the blood loss. Mr. Brunson remained in the Intensive Care Unit of the Kansas University Medical Center for several weeks. The physicians were able to remove only two of the bullets. The other two bullets were so close to his spinal cord that his physicians refused, and continue to refuse, to remove them because of the high risk of damaging his spinal cord and causing paralysis or even death. To date, the bullets remain lodged in Mr. Brunson's back and he lives in fear that even without surgery, the bullets will eventually impact his spinal cord.

35. Meanwhile, upon information and belief, Defendants Ward and Thornton were not demoted, suspended, censured, fined, or reprimanded in any way and continue to serve as officers in the Police Department.

## COUNT I

### CLAIM AGAINST DEFENDANTS WARD AND THORNTON FOR THE UNCONSTITUTIONAL USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

Plaintiff for Count I of his Complaint against separate Defendants Thornton and Ward states as follows:

36. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 35 of his Complaint as if set out in full.

37. Defendants Ward and Thornton, acting under the color of state law, intentionally and/or recklessly tased, shot and maimed Mr. Brunson on the early morning of May 25, 2020. The force employed was objectively unreasonable. Mr. Brunson had committed no illegal act, was unarmed, and posed no threat to anyone.

38. Defendants Thornton and Ward tased Mr. Brunson twice and collectively fired their weapons against Mr. Brunson at least 20 times, striking him with four bullets and causing permanent and lasting injuries.

39. At the time of the incident on May 25, 2020, Mr. Brunson had a clearly established constitutional right to be free from excessive force under the Fourth and Fourteenth Amendments of the United States Constitution.

40. Defendants Thornton and Ward violated Mr. Brunson's constitutional right to be free from excessive force. The actions of Defendants Thornton and Ward were not objectively reasonable in light of the facts and circumstances confronting them in that:

a. Mr. Brunson had committed no crime or illegal act. Even if the Raptor was stolen, Mr. Brunson had been hired just to detail it and was unaware of its status.

b. Mr. Brunson was not armed with a handgun or weapon of any kind, and Defendants Thornton and Ward failed to take reasonable steps to ascertain that Mr. Brunson, in fact, was not carrying a weapon. Throughout the entire incident, Defendants Thornton and Ward never asked Mr. Brunson if he had a firearm nor saw a firearm in his possession. The "gun" they found *after* the shooting was only a "tinting" gun used to detail car windows.

c. There was no immediate threat to the safety of the officers or others during the entire incident. At all times, Defendants Thornton and Ward were at the side of the vehicle, not in its path, as evidenced by the fact that neither of them touched any part of it. Mr. Brunson never operated the Raptor in a manner that posed a threat to Defendants Thornton or Ward according to the KBI, especially when they were shooting from 20' to 30' away. Moreover, Mr. Brunson had been tased and incapacitated.

d. Defendant Thornton's and Defendant Ward's own reckless or deliberate conduct during the incident unreasonably created any perceived need to use excessive and deadly force. Mr. Brunson had committed no crime and was not armed. Yet they encroached on Mr. Brunson's space, and then unnecessarily and prematurely used a taser gun on him, which could only anger, hurt and provoke Mr. Brunson. And then, having escalated and exacerbated the situation and backing into positions of cover and safety away from the Raptor, unloaded their firearms at the stunned Mr. Brunson.

e. Mr. Brunson was tased twice and shot four times, an amount that was certainly excessive under the circumstances.

    f. Defendant Thornton's and Defendant Ward's conduct was so careless and reckless that several of the bullets flew through and/or by the Raptor and nearly struck the female and her toddler, bystanders the officers knew were positioned on the other side of the vehicle.

    g. Neither Defendant Thornton nor Defendant Ward appeared to take tactical control of the situation. As a result, there did not exist any kind of coordinated or well-thought-out plan as to how to calmly handle and/or diffuse the situation.

  41. At all times relevant to this Complaint, the officers acted under the supervision of Defendant York, the final policymaker for the Police Department.

  42. The actions of Defendants, acting individually and/or in concert, were wanton and malicious and subjected Mr. Brunson to an unreasonable seizure in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States. Defendants' actions deprived Mr. Brunson of his right to be free from excessive force and to life, in violation of his substantive rights under the Due Process Clause of the Fourteenth Amendment.

  43. As a direct and proximate result of Defendant Thornton's and Defendant Ward's wrongful conduct, Mr. Brunson was needlessly tased, shot multiple times and suffered, and continues to suffer, serious, life-threatening permanent injuries.

  44. Defendant Thornton's and Defendant Ward's conduct was not only reckless, but also wanton and malicious, to justify an award of punitive damages.

  **WHEREFORE,** Plaintiff prays for judgment against Defendants Thornton and Ward for compensatory damages in such sum as is fair and reasonable, but which are in excess of $75,000, an award of punitive damages in an amount to be determined by the trier of fact, prejudgment

interest as provided by law and for Plaintiff's costs, expenses, and attorneys' fees pursuant to 42 U.S.C. §1988.

## COUNT II

### MONELL CLAIM AGAINST DEFENDANTS YORK AND UNIFIED GOVERNMENT/KCK FOR THE UNCONSTITUTIONAL USE OF EXCESSIVE AND DEADLY FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

Plaintiff for Count II of his Complaint against separate Defendants York and Unified Government/KCK, states as follows:

45. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 44 of his Complaint as if set out in full.

46. Defendant York was the final policymaker for the Police Department and thus, for Defendant Unified Government/KCK in matters delegated or entrusted to him.

47. Both before and at the time of the events alleged in the Complaint, the Police Department had policies, practices, customs, and procedures which operated to deprive Mr. Brunson of his constitutional rights under the Fourth and Fourteenth Amendments.

48. Defendants York and Unified Government/KCK are accountable under 42 U.S.C. § 1983 because they established policies and practices that were intended to and did encourage, endorse, and permit their agents and employees to violate the constitutional rights of Mr. Brunson and other similarly situated persons. At a minimum, Defendants York and Unified Government/KCK were deliberately and/or recklessly indifferent to such constitutional violations.

49. The unconstitutional policies, practices, customs, and procedures of Defendants York and Unified Government/KCK include, but are not limited to:

   a. A policy, practice, custom or procedure of failing to properly train and supervise officers to avoid the inappropriate and excessive use of force;

  b. A policy, practice, custom or procedure of failing to adequately train and supervise officers in the techniques of properly responding to critical incidents involving suicidal or mentally ill persons;

  c. The practice of using deadly force without regard to the need for the use of such force;

  d. A policy on the use of deadly force that fails to provide adequate guidance to officers;

  e. A practice or custom of not investigating whether an officer's use of force is justified;

  f. A practice or custom of being deliberately indifferent to constitutional violations committed by law enforcement officers;

  g. A practice or custom of not following the police department's written policies on the use of force;

  h. A practice or custom of not following the Police Department's policies on wearing and using body cameras while on duty; and

  a. A practice or custom of officers conspiring with one another to cover and protect each other from criminal and/or civil sanctions that might arise from the violation of constitutional rights of a citizen.

50. Defendants York and Unified Government/KCK established, maintained, and used the policies, practices, customs, and procedures described above before and during the tasing, shooting, and maiming of Mr. Brunson.

51. These policies, practices, customs, and procedures, as described above, were implemented intentionally and/or recklessly to deprive citizens, including Mr. Brunson, of their

constitutional rights and were a direct and proximate cause of the constitutional violations and injuries set forth in this Complaint.

52. The policies, practices, customs, and procedures demonstrate a deliberate indifference on the part of Defendants York and Unified Government/KCK toward such persons with whom their officers come into contact.

53. The constitutional violations committed by Defendants arose from circumstances constituting a usual and recurring situation.

54. Defendants York's and Defendant Unified Government/KCK's inadequate training and supervision of their police officers directly caused the violations of Mr. Brunson's constitutional rights under the Fourth and Fourteenth Amendments.

55. Defendants York and Unified Government/KCK were aware or should have been aware of the practice at the Police Department of improperly using deadly force or applying excessive force, of the officers remaining silent about the facts of the incident to cover up for and support each other and of the officers' persistent refusal to report violations of the Constitution and laws.

56. Defendants' custom and practice of failing to enforce what policies did exist to protect Mr. Brunson, and other citizens like her, was also a direct and proximate cause of the constitutional violations and injuries set forth in this Complaint.

57. Defendants' conduct was intentional, reckless, wanton, and malicious to justify an award of punitive damages.

**WHEREFORE,** Plaintiff prays for judgment against Defendants York and Unified Government/KCK for compensatory damages in such sum as is fair and reasonable, but which are in excess of $75,000, an award of punitive damages in an amount to be determined by the trier of

fact, prejudgment interest as provided by law and for Plaintiff's costs, expenses, and attorneys' fees pursuant to 42 U.S.C. §1988.

## COUNT III

**CLAIM UNDER 42 U.S.C. 1983 AGAINST DEFENDANT YORK, WHOSE ACTS AND OMISSIONS AS A SUPERVISOR OF DEFENDANT WARD AND THORNTON RESULTED IN VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**

Plaintiff Brunson, for Count III of his Complaint against Defendant York states as follows:

58. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 57 of his Complaint as if set out in full.

59. Defendants Ward and Thornton used excessive force in tasing and shooting Mr. Brunson multiple times.

60. Defendant York intentionally and purposefully, though his own individual actions, caused the violation of Mr. Brunson's constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment and the violation of his substantive right to be free from excessive and deadly force under the Fourteenth Amendment to the Constitution of the United States.

61. By failing to ensure that officers under his supervision would follow policies and protocol and proceed according to a sound tactical plan, Defendant York recklessly and intentionally instigated events leading to the use of excessive force against Mr. Brunson.

62. As a direct and proximate result of Defendant York's acts and omissions, Mr. Brunson suffered was needlessly tased, shot multiple times and suffered, and continues to suffer, serious, life-threatening permanent injuries.

**WHEREFORE,** Plaintiff prays for judgment against Defendants York, for compensatory damages in such sum as is fair and reasonable but which are in excess of $75,000, an award of

punitive damages in an amount to be determined by the trier of fact, prejudgment interest as provided by law and for Plaintiff's costs, expenses, and attorneys' fees pursuant to 42 U.S.C. §1988.

## COUNT IV

### SUPPLEMENTAL STATE LAW CLAIMS AGAINST DEFENDANTS WARD AND THORNTON FOR NEGLIGENCE

63. Plaintiff incorporates by reference herein the allegations contained in paragraphs 1 through 62 of his Complaint as if set out in full.

64. As law enforcement officers, Defendants Ward and Thornton owed special and mandatory duties to protect Mr. Brunson from injury, to not use excessive force, and to accommodate his disability.

65. Defendants Ward and Thornton failed to exercise due care in the performance of their duties.

66. Defendants Ward and Thornton breached their duties in repeatedly shooting an incapacitated, unarmed, and innocent Mr. Brunson with their handguns and then tasing him again and again.

67. Defendants Ward and Thornton did not have discretion to use excessive and/or unreasonable force on Mr. Brunson when arresting him.

68. All the wrongful acts or omissions of Defendants Ward and Thornton during the shooting incident on May 25, 2020, were committed within the scope of their employment as officers of the Unified Government/KCK and the Police Department.

69. Consequently, Defendant Unified Government/KCK is liable for damages caused by the negligent and/or wrongful acts or omissions of its employees under the doctrine of *respondeat superior* and the Kansas Tort Claims Act, K.S.A. 75-6103.

70. The special duties owed to Mr. Brunson were mandatory, not discretionary, and so the Defendants do not have immunity under Kansas Tort Claims Act, K.S.A. 75-6104.

71. As a direct and proximate cause of Defendants' negligence, Mr. Brunson was needlessly tased, shot multiple times and suffered, and continues to suffer, serious, life-threatening permanent injuries.

72. Defendant Thornton's and Defendant Ward's conduct was also reckless, wanton and malicious to justify an award of punitive damages.

**WHEREFORE,** Plaintiff prays for judgment against Defendants Ward and Thornton in such sum as is fair and reasonable but which are in excess of $75,000, an award of punitive damages in an amount to be determined by the trier of fact, prejudgment interest as provided by law and for Plaintiff's costs of suit incurred herein.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

## REQUEST FOR DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

**BAUTISTA LEROY LLC**

/s/ *Patricia "Peezy" Mullins*
Peezy Mullins, Esq.    #19551
Jose M. Bautista           #78500
3770 Broadway Blvd.
Second Floor
Kansas City, MO 64111
Tel:     816-221-0382
Fax:    800-816-7060
Email:  peezy@bautistaleroy.com
Email:  jose@bautistaleroy.com
**ATTORNEY FOR THE PLAINTIFF**